**FILED**

APR 12 2024

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY_____ DEP CLK

Noel Davila,
    Plantiff

Case No.

v.

**VERIFIED COMPLAINT**
**BY PRISONER**

FEDERAL BUREAU OF PRISONS,
UNITED STATES OF AMERICA,
    DEFENDANTS,

April 4, 2024

5:24-CT-3092-D

## I.   JURISDICTION

1. Jurisdiction of this Court, over the Federal Bureau of Prisons is invoked pursuant to 5 U.S.C. § 701 at seq; Administrative Procedures Act

2. Jurisdiction of this Court, over the United States of America is invoked pursant to 28 U.S.C. §1331; Origianl Jurisdiction

## II.   PARTIES

3. Plantiff, Noel Davila at all relevant times was and is incarcerated at the Federal Corrections Institution - Butner, North Carolina

4. Defendant, Federal Bureau of Prisons at all relevant times operated Federal Correctional Institution - Butner, North Carolina

5. Defendant, United States of America at all relevant times employed, R. Ramos as Warden and was in control of Federal Corrections Institution - Butner, North Carolina. Mrs. Richardson, Medical Administrator who was in control of the Medical Department and Staff of Federal Corrections Institution - Butner, North Carolina. Mr. Holland NP, who was in charge of the medical pill line on July 10, 2021. Mr. C. Pruitt, who was in charge of medical pill line on November 25, 21 at Federal Corrections Institution - Butner, North Carolina. At all times relevant herein, Defendants' acted under color of Federal Law.

6. Plantiff has sought both in formal resolution and has filed a for request for Administrative Remedy and appeals through the BOP's Administrative Remedy Program.  Each Defendant is sued in their offical and personal capacity at all times mentioned herein.

IV.   RELEVANT FACTS

7. On July 10, 2021, at the evening medicaticn pill line, Plantiff noticed that the medication was already crushed and inside a small cup.  The Plantiff looked inside and noticed that the medications did NOT look like the medications that he normaly took.  The Plantiff immediately reported it to the Medical Staff on duty, NRP Holland, that the medication did NOT look the same as those he normally took.  Mr. Holland insisted that it was the Plantiff's normal medications.  To avoid conflict the Plantiff took the medication.  Moments after the Plantiff took the medication he notified his ICT (Inmate Companion Transporter) that he was not felling well and the medication Plantiff took was making Plantiff feel weird.

8. The Plantiff was about halfway back to the Housing Unit, when an Officer on Duty stopped the Plantiff telling him that the Medical Staff wanted him to return to Medical IMMEDIATLEY, as it was very urgent.  After returning to the Medical Unit the Plantiff began to shake violently and develop red burning spots all over his body. Plantiff then began to itch, become drowsy, incherent, and started vomiting for several minutes.  After Plantiff stopped vomiting, Mr. Holland then told the Plantiff that **YES**, he did give Plantiff someone elses medication.  Mr. Holland did make a dangerous mistake in giving the Plantiff the wrong medication.

9. As a precaution the Plantiff was taken to an examination room, where Mr. Holland checked and monitored the Plantiff's heartrate and blood pressure.

2

During the obsercation Mr. Holland notified the Plantiff that his blood pressure and heart rates were both elevated. Mr. Holland then gave the Plantiff and injection of an undisclosed medication to subdue the vomiting, nausea, and upset stomach. The Plantiff's pulse was 101 beats per minute and Mr. Holland told him that his blood pressure was very high. The Plantiff was told to stay in the Medical Unit, where they continued to monitor his health until he could be released to his Housing Unit.

10. Prior to this incident the Plantiff had **NOT** been perscribed Anti-Nausea Medications.

11. On July 16, 2021 the Plantiff sent and email (via the TruLincs system) to Health Services Administrator, Mrs. Richardson, to notify her of the incident that had taken place on July 10, 2021. The delay in notification was due to it taking the Plantiff six days to recover his faculties. Mrs. Richardson's response was routed through Correctional Counselor Malone (see attached exihbit A and exihbit B), stating that "an investigation of (the Plantiff's) claims was investigated and that the Staff is trained annually on documentation of vital signs...". This does not address his claim of medication being wrongfully distributed to the Plantiff (or the rest of the inmate pcpulation of Federal Correctional Institue - Butner, North Carolina).

12. On October 19, 2021 the Plantiff requested his medical records, in an attempt to discover the medication that had been wrongfully administered, the medication administered to counter the wrong medication, and to note what observations of his health were recorded. The Plantiff recalls his heart rate being 101 beats per minute. After he started reviewing his records, he discovered that the incident of July 10, 2021 had been sanitized. The Plantiff's vital signs were recoreded at a less than urgent care level, where he recalls Mr. Holland stating that his blood pressure was very high and that

a heart rate of 101 beats per minute was also.  However this does not appear in his medical records.  Not only did Mr. Holland falsify, sanitize, forge, create, and produce a flagrently altered copy of medical records, he engaged in the BOP's policy to deny, delay, and cover up medical care.  (see exhibit C).  This practice has been documented by the NPR Network.

13. On November 13, 2021 the Plantiff filed a form called a BP-9, which is the second level of his administrative rememdies.  The Plantiff restates to the Warden about the incorrect medication being dispensed, and the symptoms of which he experienced.  In this administravtive remedy he brings up an earlier two incidents that luckily did not have a severe reaction.  Both earlier incidents also were not recorded by Mr. Pruitt.  Mr. Pruitt has repeatedly administered wrong medication to inmates, but is never held accountable. (see exhibit D)

14. On November 24, 2021 after the so called retraining of Staff and Mrs. Richardson addressing the issue with her Staff.  Mr. Pruitt distributes to the Plantiff the wrong medication again. After doing so he states "that was nothing...".  The Plantiff lets Mr. Pruitt know that he is having difficulties and is told to go back to his housing unit, lay down, and it will subside.

15. On November 25, 2021 at evening pill line he again is given the wrong medication by Mr. Pruitt.  This prompts the Platiff to submit another BP-8 and BP-9 (see exibit E).

16. On January 21, 2022 the Plantiff sent a BP-10 to the Regional Director of the Mid-Atlantic. (see exibit F).  In this the Plantiff was notified that he had been having chronic abdominal pain and his Physican ordered a CT Scan of that region-back on July 10, 2021.  The Plantiff had not reported issues with his abdominal area prior to July 10, 2021, so why would there be a referal for a CT Scan (conveniently dated the day before the first misdistribution of

4

medication). He also did not find out he was toget a CT Scan until the BOP's Regional Driector told him.

FACTUAL STATEMENT

17. On July 10, 2021 the Platntiff went to pill line per FCI Butner, NC's schedule of daily movements.

18. On July 10, 2021 the Plantiff was given his medication crushed inside of a small cup, which prevents inmate from seeing what medication was given.

19. On July 10, 2021 the Plantiff as a responsible person, who is mentally capable of making his own decisions, was given an unidentifiable medication. Upon looking into the cup noticed that the medication looked different from normal.

20. On July 10, 2021 the Plantiff reported to NRP Thomas Holland, that the medication looked and tasted inconsistant with his normal medications.

21. On July 10, 2021 Mr. Holland told the Plantiff that it was the Plantiff's normal medication (in a condisending tone of voice).

22. To avoid the same conflict that the Plantiff has experienced or witnessed other other inmates experience in the past he took the medication.

23. On July 10, 2021 the Plantiff was told by a Duty Officer to return to Medical right away.

24. On July 10, 2021 the Plantiff returned to the Medical Unit where NRP Holland told him he in fact was given the wrong medication.

24. On July 10, 2021 the Plantiff is questioned as to how he was feeling at that moment, giving the Plantiff the impression that he was part of a devistating experiment or attempt on his life.

25. The Plantiff filed an Administrative Tort Claim concerning the occurrences compained of, within two years after those occurrences, and brought suit within six months of the mailing of the Notice of Final Agency Denial of that claim, as requeired by 28 U.S.C. §24.01 [for a claim under Federal Tort Claims Act (see enclosed attached exhibits).

5

26. Plantiff exhausted his administrative remedies before filing this complaint.

27. The Bureau of Prisons has a duty of care under federal statute to provide suitable quarters and provide for safekeeping, care and subsistence of all persons charged with or convicted of offenses against the United States, or held as witness or otherwise and to provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States and most Courts have held that the Defense of qualified immunity is not applicable in a FTCA suit, see, Castro v. U.S. 34F.3d 106, 111 (2d Cir. 1994) ("qualified immunity will not immunize the United States from liability"); Ruffalo v. U.S., 590 F. Supp. 706, 710 (E.D. MO. 1984); Arnsberg v. U.S., 549 F. Supp. 55, 57(D. OR. 1982), Rev'd on other grounds, 757 F. 2d 971(9th Cir. 1985).

28. Supervisors can be held liable for the actions of their subordinates.
1) For setting in motion a series of acts by others, or knowingly refusing to terminate a series of acts by others, which they knew or reasonably should have known would cause to inflict injury; 2) for culpable action or inaction in training supervison, or control of subordinates; 3) for acquiescence in the deprivacion by subordinates; or 4) forconduct that shows a "reckless or callous indifference to the rights of others".

29. Supervisory Defendants personally participated in the negligence and cover-ups, deprivation of the proper prescribed medication and were aware of widespread of Defendants Thomas Holland and C. Pruitt given the wrong medication to Plantiff and inmates and covering-ups by failing to properly filed an incident report and failing to provide Plaintiff's with the proper medical care after consuming or taking the wrong medication, and the Supervisory Defendants failed to take action to prevent further misconduct.

30. Defendants who engage in the sham of cover-ups, reviews to correct the wrongdoing could be held liable.

31. Defendant's participated directly in the alleged negligence and cover-ups, and after being informed of the violation through a report or appeal, failed to remedy the wrongs.

32. Defendant's created a policy or custom under under which Federal Tort un-constitutional practives occured, or allwoed the continuance of such policy or custom.

33. The Supervisory Defendant's were grossly negligent in supervising, training and failed to properly investigate and reprimand subordinates who committed the wrongful acts.

34. The Supervisory Defendant's exhibited deliberate indifference to the rights of Plaintiff by failing to act on information indicating that unconstitutional and wrongful act were occuring.

35. The FTCA extends to Torts committed by Federal Employees within the "scope of [their] office or employment". Also, the (FTCA) allows suit against the Federal Government for Torts committed by its employees.

36. Defendant's were acting within the scope of his/her, its office or employment.

37. Defendant's acted negligently; the Plaintiff suffered a serious physical impact from this wrong medication and was within the **"zone of danger"** of Defendant's actions, and the Plaintiff suffered emotional distress that was "serious and verifiable".

38. Defendant's were negligent, reckless and intentionally and maliciously committed cover-ups by failing to properly file an incident report as a flagrant character of malicious conduct and this should be insulting and "utterly intolerable as in a civilized community".

39. Negligence is defined as "the failure to use such care as a resonably prudent and careful person would use under similar circumstances and it can include a broad range of acts or failure to act that result in injury.

40. A Tort is a personal injury caused by the wrongful negligence act of another person.

### NEGLIGENT, FAILURE TO PROTECT, COVER UPS AND CONSPIRACY

41. Defendant's owed the Plaintiff a duty of reasonable care to protect his from any harm.

42. Defendant's breached that duty by failing to provide the proper prescribed medication.

43. Defendant's breach that duty by failing to protect him from any harm.

44. Defendant's breach that duty by covering up the incident reports, and failing to file them.

45. Defendant's breach that duty of reasonable care by not providing the Plaintiff the proper medical care after ingesting the wrong medication, telling the Plaintiff to sleep it off.

46. Defendant's breached that duty by conspiring with one another in covering up what really happened to the Plaintiff.

47. Defendant's breach that by continuing to cover up after being informed of the violation through a report or appeal and failed to remedy the wrong.

48. Defendant's breached that duty by failing to properly investigate and reprimand subordinates who committed the wrongful acts.

49. The breach of duty resulted in serious physical and emotional injury and damages.

50. The breach of duty proximately caused those damages.

51. Defendant's failed to use "reasonable care" to avoid a forseeable risk.

The Plaintiff respectfully moves this Honorable Court to appoint counsel because a Lawyer can generally do a better job than a prisoner in conducting discovery (especially depositions) serving Defendant's with this summons, litigation,

negotiating a settlement of metirious claims, and performing the other difficult task of litigation, by virtue of experience and of not being lock up in the Defendant's custody, and Plaintiff have a physical and mental disability that would make it difficult for him to present his case.

## CONCLUSION

Wherefore, Plaintiff respectfully prays that this Honorable Court enter judgement granting Plaintiff:

A: Declaration that the acts and ommissions described herein violates Plaintiff's rights under FTCA and Laws of the United States.

B: Declare that Defendant's failed to protect Plaintiff from knowing risk of harm by giving him the wrong medication, and he was severely injured from the side effects.

C: Declare that Defendant's has a duty of care owed to Plaintiff, and that they breach that duty by giving him the wrong medication.

D: Declare that Defendant's failed to properly file incident reports.

E: Declare that Defendant's Superiors failed to properly investigate, train and sanction their subordinates.

F: Declare that Defendant's breach of duty resulted in serious physical and emotional injury and damages.

G: Declare that Defendant's breach of duty proximately casue those damages, and to declare any other declaration as it may appear Plaintiff is entitled to.

H: Award damages for Plaintiff's physical and emotional injuries against each Defendant for $250,000.00 (Two hundred and fifty thousand dollars)

I: Award Attorney fees

J: A Jury trail on all issues triable by a jury

K: Award Plaintiff's costs in this suit

<u>L</u>: To prevent the Defendant's or any of their subordinates from retaliation for filing this suit.

I have read the foregoing verified complaint for damages, declaratory relief and hereby verify that the matters asserted therein are true, except as to matters alleged on information and delief, and, as to those, I believe them to be true. Pursuant to 28 U.S.C. § 1746 & Pursuant to 18 U.S.C. § 1621, <u>Hatchet v. Nettles</u>, 201 F. 3d 651, 654 (5th Cir.)

I certify and declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated on: __4-4-24__

__Noel Davila__

Noel Davila - pro se

Executed On: __4-4-24__

__10-31-24__

Notary: My Commision expires