IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CT-3092-D

| | | |
|---|---|---|
| NOEL DAVILA, Plaintiff, | ) | |
| v. | ) | **ORDER** |
| UNITED STATES OF AMERICA, et al., Defendants. | ) | |

On April 12, 2024, Noel Davila ("Davila" or "plaintiff"), a federal inmate proceeding pro se, filed a complaint under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680 [D.E. 1, 8]. On November 20, 2024, the court allowed the action to proceed [D.E. 9]. See 28 U.S.C. § 1915A. On July 31, 2025, the court granted Davila's motion for leave to file an amended complaint and dismissed Davila's claims against the Federal Bureau of Prisons and Davila's Bivens claims against the United States [D.E. 50]. On May 4, 2026, the court granted Davila's motion for leave to file a second amended complaint [D.E. 85].

On June 24, 2025, discovery concluded. See [D.E. 27]. On November 21, 2025, Thomas Holland ("Holland"), Chase Pruitt ("Pruitt"), Raphael Ramos ("Ramos"), and Jennifer Richardson ("Richardson") (collectively, "the individual defendants") moved to dismiss the first amended complaint for failure to state a claim [D.E. 62] and filed a memorandum in support [D.E. 63]. They also moved to conditionally stay proceedings if the court denies their motion to dismiss [D.E. 91]. On the same date, the United States moved to dismiss the action or in the alternative for summary judgment [D.E. 64] and filed a memorandum in support [D.E. 65], a statement of material facts

[D.E. 66], and an appendix [D.E. 67]. Because the United States attached materials outside the scope of the pleadings, the court construes the motion as requesting summary judgment. See Fed. R. Civ. P. 12(d). The court notified Davila about defendants' motions, the consequences of failing to respond, and the response deadlines [D.E. 68, 69]. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam).

Davila responded in opposition to defendants' motions [D.E. 79, 90, 92]. Davila also moved to strike the individual defendants' motion to dismiss because it addressed the first amended complaint and not the second amended complaint. See [D.E. 93] 1. The second amended complaint clarified the factual details and did not add any new claims or defendants. See [D.E. 77] 1–2; [D.E. 77-1] 1–11; cf. [D.E. 39] 1–12. Notably, when Davila moved for leave to file a second amended complaint, Davila stated: "Defendants' already-filed dispositive motions can be evaluated in the light of the facts in the new complaint. (And thus no new dispositive motions need be filed)." [D.E. 77] 2. Thus, the court will consider Davila's second amended complaint in ruling on the individual defendants' motion to dismiss.

As explained below, the court denies plaintiff's motion to strike, grants the individual defendants' motion to dismiss, grants the United States' motion for summary judgment, and denies as moot the individual defendants' motion to stay.

I.

Davila is incarcerated at the Federal Correctional Institution in Butner, North Carolina ("FCI Butner"), where the allegations of his complaints arose. See [D.E. 77-1] 2–10. On July 10, 2021, Davila alleges Holland, a nationally registered paramedic, gave him a cup of crushed medication and told him to take it. See id. at 3. Davila told Holland that it did not look like the correct medication, but Holland assured him that it was the correct medication. See id. After

Davila ingested the medication, he felt nauseous, lightheaded, itchy, and trembly. See id. Davila returned to the pharmacy window and told Holland that he ingested the wrong medication and felt sick, but Holland told him to leave because he was delaying the line. See id. On his way back to the housing unit, Davila experienced abdominal cramps, head pressure, and thought he was going to lose consciousness. See id. at 4. An officer told Davila to return to the health services unit. See id. When Davila returned to the health services unit, Holland informed Davila that he gave him the wrong medication. See id. Holland took Davila's vital signs and administered anti-nausea medication. See id. Davila asked to see a doctor, but Holland told him to sleep it off. See id. Davila felt sick for almost a week, was unable to keep food down, and stayed in bed. See id. at 5.

On November 21, 2021, Pruitt gave Davila a cup of crushed medication and told him to take it. See id. Davila told Pruitt that Pruitt violated prison pharmacy policy when he removed the medication from its packaging and crushed it outside of Davila's presence. See id. Pruitt told Davila that Davila should not tell Pruitt how to do his job and again told Davila to take the medication. See id. at 6. After Davila ingested the medication, he experienced the same symptoms he experienced on July 10, 2021, including head pressure, nausea, and trembling. See id.

On November 24, 2021, Pruitt again gave Davila a cup of crushed medication and told him to take it. See id. When Davila refused to take the medication, Pruitt explained that preopening and crushing the medication accelerated things. See id. Davila implored Pruitt to stop accelerating things because he had gotten sick twice from receiving the wrong medication. See id. Pruitt again told Davila to take the medication. See id. After Davila ingested the medication, he felt nauseas, trembly, and lightheaded. See id. An officer informed Pruitt of Davila's symptoms and told Davila that Pruitt advised him to sleep it off. See id. at 7. Davila's symptoms continued throughout the night. See id.

Davila complained to Ramos and Richardson, the warden and associate health services administrator at FCI Butner, about being given the wrong medication on three occasions and they did not properly resolve the issue. See id. at 7–8. Davila continues to suffer from vertigo, anxiety, and insomnia. See id. at 8.

Davila alleges Bivens and FTCA claims concerning inadequate medical care. See id. at 8–10. Specifically, Davila brings claims against the individual defendants under Bivens for being deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. See id. Davila brings a claim against the United States for medical negligence under the FTCA. See id. Davila seeks monetary damages and an injunction requiring the United States to ensure FCI Butner employees follow the prison's pharmacy policy. See id. at 10.

II.

The individual defendants move to dismiss the second amended complaint for failure to state a claim. See Fed. R. Civ. P. 12(b)(6); [D.E. 63] 1–23. A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (cleaned up); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must view the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (citation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not

accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (citation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[] [his] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity" without converting the motion into one for summary judgment. Goines, 822 F.3d at 166. Additionally, a court may take judicial notice of public records. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment. See Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979); Estelle v. Gamble, 429 U.S. 97, 104 (1976). To plausibly allege such a claim, Davila must plausibly allege "that the officers acted with deliberate indifference (subjective) to [his] serious medical needs (objective)." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (cleaned up); see Estelle, 429 U.S. at 104; Hixson v. Moran, 1 F.4th 297, 302 (4th Cir. 2021); Sosebee v. Murphy, 797 F.2d 179, 182–83 (4th Cir. 1986). Deliberate indifference "sets a particularly high bar to recovery." Iko, 535 F.3d at 241. Deliberate indifference requires that a defendant know of and purposefully ignore "an excessive risk to inmate health or safety[.]" Farmer v. Brennan, 511 U.S. 825, 837 (1994). A prisoner, however, is not

entitled to choose his course of treatment. See Hixson, 1 F.4th at 302–03; Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam). Likewise, mere negligence in diagnosis or treatment does not state a constitutional claim. See, e.g., Estelle, 429 U.S. at 105–06; Hixson, 1 F.4th at 303.

Davila has not plausibly alleged that the individual defendants were deliberately indifferent to his medical needs. At most, Davila alleges that two individual defendants (i.e., Holland and Pruitt) were negligent in giving him the wrong medication on three total occasions, which fails to state a claim under the Eighth Amendment. See, e.g., Brown v. Briscoe, 998 F.2d 201, 204 (4th Cir. 1993) (per curiam); Vaughan v. Hicks, No. 1:23-4577, 2023 WL 6119727, at *2–3 (D.S.C. Sept. 15, 2023) (unpublished); Thornton v. Cindy, No. 22-2610, 2022 WL 13725854, at *3 (D. Md. Oct. 20, 2022) (unpublished); Washington v. Colbird, No. 2:19-CV-280, 2021 WL 5287164, at *2–3 (S.D. W. Va. Oct. 13, 2021) (unpublished), report and recommendation adopted, 2021 WL 5285049 (S.D. W. Va. Nov. 12, 2021) (unpublished); Tillery v. Va. Peninsula Reg'l Jail, No. 1:20-CV-751, 2020 WL 6742991, at *3 (E.D. Va. Nov. 17, 2020) (unpublished); Davis v. Clayton, No. 3:11-3071, 2012 WL 393147, at *3 (D.S.C. Jan. 9, 2012) (unpublished), report and recommendation adopted, 2012 WL 391077 (D.S.C. Feb. 3, 2012) (unpublished); Williams v. Carter, No. 3:10-42, 2011 WL 3511009, at *3 (D.S.C. June 29, 2011) (unpublished), report and recommendation adopted, 2011 WL 3511065 (D.S.C. Aug. 9, 2011) (unpublished); Chestnut v. S.C. Dep't of Corr., No. 3:10-200, 2010 WL 1052213, at *3 (D.S.C. Feb. 12, 2010) (unpublished), report and recommendation adopted, 2010 WL 1052207 (D.S.C. Mar. 19, 2010) (unpublished).

To the extent Davila alleges that two individual defendants violated the prison's pharmacy policy by removing his medication from its packaging and crushing it outside of his presence, violating a prison policy that does not result in a constitutional violation does not create a viable claim under Bivens. See, e.g., King v. Riley, 76 F.4th 259, 267 (4th Cir. 2023); Danser v.

Stansberry, 772 F.3d 340, 348–49 (4th Cir. 2014); Jackson v. Sampson, 536 F. App'x 356, 357–58 (4th Cir. 2013) (per curiam) (unpublished). Thus, the court grants the individual defendants' motion to dismiss and denies as moot the individual defendants' motion to stay.

III.

The United States argues that the court should dismiss Davila's FTCA claim for medical negligence because even viewing the evidence in the light most favorable to Davila, no rational factfinder could find proximate cause or damages. See [D.E. 65] 1–21. Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Scott v. Harris, 550 U.S. 372, 378, 380 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, see Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (cleaned up). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. See Anderson, 477 U.S. at 248– 49. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Scott, 550 U.S. at 378.

Under the FTCA, the United States waives sovereign immunity for "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1); see Millbrook v. United States, 569 U.S. 50,

51–52 (2013); Levin v. United States, 568 U.S. 503, 505–06 (2013); Blanco Ayala v. United States, 982 F.3d 209, 214 (4th Cir. 2020); Anderson v. United States, 669 F.3d 161, 164 (4th Cir. 2011); Kerns v. United States, 585 F.3d 187, 194 (4th Cir. 2009). A prisoner "can sue under the [FTCA] to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150, 150 (1963); see Millbrook, 569 U.S. at 51–52.

The court applies "the law of the place where the act or omission occurred," which in this case is North Carolina law. 28 U.S.C. § 1346(b)(1); see Littlepaige v. United States, 528 F. App'x 289, 292 (4th Cir. 2013) (unpublished); Olds v. United States, 473 F. App'x 183, 184–85 (4th Cir. 2012) (per curiam) (unpublished); Cibula v. United States, 551 F.3d 316, 319 (4th Cir. 2009). In North Carolina, a plaintiff asserting medical negligence must prove "the existence of a legal duty or standard of care owed to the plaintiff by the defendant, breach of that duty, and a causal relationship between the breach of duty and certain actual injury or loss sustained by the plaintiff." Blackwell v. Hatley, 202 N.C. App. 208, 212, 688 S.E.2d 742, 746 (2010) (cleaned up); see Camalier v. Jeffries, 340 N.C. 699, 706, 460 S.E.2d 133, 136 (1995). "To hold a defendant responsible for injuries, expert medical testimony is necessary to establish that defendant's negligence was a substantial factor, that is, a proximate cause of the particular injuries for which plaintiff seeks recovery." Monroe v. Rex Hosp., Inc., 272 N.C. App. 75, 77, 844 S.E.2d 43, 46 (2020), disc. rev. denied, 376 N.C. 545, 851 S.E.2d 622 (2020); Lee v. Stevens, 251 N.C. 429, 433–34, 111 S.E.2d 623, 626–27 (1959).

Even viewing the record in the light most favorable to Davila, no rational factfinder could find that being given the wrong medication on three occasions was the proximate cause of Davila's alleged injuries. On July 10, 2021, at 7:35 p.m., Davila received a clinical encounter with Holland

for complaints of nausea and vomiting. See [D.E. 67-2] 33. Holland examined Davila and made the following note:

> Inmate seen for nausea and vomiting x2 while in lobby of medical. Inmate was anxious and complained of sudden onset nausea coinciding with anxiety onset, but vomited x2 immediately after taking his medication. Inmate evaluated, vital signs stable, and feels a little better after vomiting but remains nauseated and was about to eat dinner. Inmate given 2mg Zofran IM and advised to report back to medical if symptoms persist. Inmate less anxious after medication administration and states that he is starting to feel better.

Id. Holland advised Davila to follow-up with sick call as needed and to eat small portions of non-greasy and non-sugary foods until his nausea improved. See id. at 34, 44.

On July 23, 2021, Dr. Lawrence Sichel ("Sichel") reviewed Davila's chronic care medication chart and made no changes. See id. at 32. On August 2, 2021, Davila received a clinical encounter with Sichel for a complaint of pain concerning a spinal injury, a request for antifungal cream because his groin itched, and a request for a follow-up appointment with a speech therapist because he continued to have difficulty swallowing. See id. at 30.

Medical personnel took Davila's vitals several times in July 2021, August 2021, and November 2021. See id. at 37–38. On November 22, 2021, Davila did not show up to have his blood pressure taken. See id. On November 23, 2021, Sichel changed Davila's Symbicort prescription to generic Advair as current non-formulary preferred agent. See id. at 1.

The record demonstrates that between July 2021 and November 2021, Davila was treated for numerous medical conditions, including anemia, asthma, chest pain, deviated nasal septum, dry eye syndrome, dysphagia, gastro-esophageal reflux disease with esophagitis, joint disorder, low back pain, neuralgia and neuritis, neurogenic bowel, neuromuscular dysfunction of bladder, muscle spasm, chronic pain, paraplegia, sleep apnea, abdominal pain, and urinary incontinence. See [D.E. 66] ¶ 7. Davila was prescribed numerous medications, including fluticasone/salmeterol

inhaler, oxybutynin, cetirizine, docusate sodium, glycerin rectal suppository, methadone, pregabalin, artificial tears, tizanidine, omeprazole, senna, albuterol inhaler, and fluticasone prop nasal spray. See id. at ¶ 8.

"[E]xpert testimony is required to show causation when an individual is prescribed or provided with an incorrect medication." Hancock v. United States, No. 1:20-483, 2023 WL 11051950, at *6 (S.D. W. Va. May 18, 2023) (unpublished), report and recommendation adopted, 2024 WL 1342784 (S.D. W. Va. Mar. 29, 2024) (unpublished). Davila provided no expert testimony to show causation. Nonetheless, Davila argues that his testimony suffices in lieu of expert testimony because "[g]iven the temporal proximity of the negligent acts to [his] adverse reactions, a trier-of-fact could conclude, without more, that it is more likely than not that the medication errors were the causes of [his] reactions." [D.E. 90-1] 4 (cleaned up). Davila also seeks to rely on hearsay statements of Holland, Pruitt, and Sichel because they treated him. See id. at 5. Specifically, Davila provided his own declarations summarizing the alleged opinions of these medical professionals and declares they told him that they believe ingesting the wrong medication caused his symptoms. See [D.E. 90-2] 2–5. According to Davila, Sichel told him "[t]hat based on the timing of the onset of the symptoms (convulsions, vomiting, chills, and loss of consciousness) in relation to [Davila's] ingestion of the medication (at issue), [Sichel's] knowledge of [Davila's] medical history, and the fact that [Davila] had never before suffered those symptoms, that those symptoms were caused by [Davila] ingesting the wrong medication[.]" Id. at 4. Davila declares he asked Sichel "to write a report about the instances of [Davila] being administered the wrong medication, and about the adverse effects that [Davila] experienced, and [Sichel] told [Davila] that he was not allowed to do so at the request of an inmate." Id. at 5.

The court rejects Davila's argument that his proffered evidence demonstrates causation in lieu of expert testimony. As for Davila's lay testimony, medical personnel treated Davila for numerous medical conditions and prescribed him numerous medications during the relevant time period. See [D.E. 66] ¶¶ 7–8. On this record, Davila's alleged injuries could have been caused by his pre-existing medical conditions or other regularly administered medications and not from receiving the wrong medication on three occasions. Davila "cannot rely upon the doctrine of res ipsa loquitur because, due to the numerous complex medical issues noted above, a layperson's common knowledge is insufficient to understand whether negligence occurred[.]" Jones v. United States, No. 5:21-CT-3158, 2024 WL 4280921, at *26 (E.D.N.C. Sept. 24, 2024) (unpublished). Moreover, "it is not within the common knowledge of a lay person whether ingesting [three] doses of [the wrong medication] over the course of [four months] was the proximate cause of [Davila's] alleged injuries." Hancock, 2023 WL 11051950, at *6; Moore v. United States, No. 9:23-CV-4665, 2025 WL 2549149, at *4–5 (D.S.C. May 15, 2025) (unpublished), report and recommendation adopted, 2025 WL 2426661, (D.S.C. Aug. 22, 2025) (unpublished); Reid v. United States, No. 1:22-1687, 2024 WL 5378989, at *4–5 (D.S.C. Nov. 4, 2024) (unpublished), report and recommendation adopted, 2025 WL 247992 (D.S.C. Jan. 17, 2025) (unpublished). Thus, Davila must present expert testimony to prove causation.

As for Davila's attempt to use the alleged hearsay statements of Holland, Pruett, and Sichel, he cannot do so. See Fed. R. Evid. 802. As for the medical record, it demonstrates that Davila only received treatment on one of the three dates that he was allegedly given the wrong medication. See [D.E. 67-2] 1–75. On July 10, 2021, Holland examined Davila for complaints of nausea and vomiting. See id. at 33–34. The medical record does not state that Davila took the wrong medication or mention any other symptoms that Davila allegedly suffered from ingesting the

wrong medication. See id. Approximately three weeks later, on August 2, 2021, Sichel examined Davila for the first time after the alleged July 10, 2021, incident for complaints of spinal injury pain, a request for antifungal cream, and a request for a follow-up appointment with a speech therapist. See id. at 30. Again, the medical record does not state that Davila took the wrong medication on July 10, 2021, and Davila's complaints were unrelated to the symptoms that Davila allegedly suffered from ingesting the wrong medication on July 10, 2021. See id. Additionally, Davila did not receive any medical treatment after he allegedly took the wrong medication on November 21 and 24, 2021. See id. at 1–75. Even apart from the hearsay problem, the treating medical professionals did not form the alleged opinion that ingesting the wrong medication caused Davila's symptoms while they were treating Davila. Thus, even if the hearsay is admissible, the medical professionals had to provide an expert report. See, e.g., Fed. R. Civ. P. 26(a)(2)(B); Morris v. Bland, 666 F. App'x 233, 239 (4th Cir. 2016) (per curiam) (unpublished); In Re C.R. Bard, Inc., 948 F. Supp. 2d 589, 615 (E.D.N.C. 2013). They did not; therefore, the opinions are not admissible.

Alternatively, even if the medical professionals are exempt from providing an expert report (cf. Fed. R. Civ. P. 26(a)(2)(C)), they cannot serve as Davila's medical expert under Title 5 of the Code of Federal Regulations because they are employees of the United States. See 5 C.F.R. § 2635.805(a); Ueland v. United States, 291 F.3d 993, 999 (7th Cir. 2002); Zambito v. United States, No. 18-CV-3612, 2022 WL 950467, at *4 (E.D.N.Y. Mar. 29, 2022) (unpublished); United States v. Lecco, 495 F. Supp. 2d 581, 584 (S.D. W. Va. 2007). Thus, the court grants the United States' motion for summary judgment. See, e.g., Hancock, 2023 WL 11051950, at *6 ("Since Plaintiff has failed to present an expert witness, Plaintiff is unable to establish that being provided the incorrect medication was the proximate cause of his alleged injuries.").

Alternatively, Davila cannot bring a FTCA claim against the United States for "mental or emotional injury . . . without a prior showing of physical injury." 28 U.S.C. § 1346(b)(2). "Although the FTCA does not define physical injury, courts have held that the physical injury need not be significant, but it must be more than de minimis." Davis v. Bell, No. 5:21-CT-3119, 2022 WL 1043697, at *4 (E.D.N.C. Feb. 23, 2022) (unpublished) (cleaned up) (collecting cases). Davila alleges he suffered from nausea, vomiting, dizziness, chills, convulsions, loss of consciousness, trembling, fatigue, panic attacks, and anxiety. See [D.E. 90-2] 2–5. The medical record belies Davila's allegations for all symptoms except nausea and vomiting. See [D.E. 67-2] 1–75. Moreover, even viewing the record in the light most favorable to Davila, the alleged nausea and vomiting constitute de minimis injury. See, e.g., McKreith v. United States, No. 7:19-CV-363, 2020 WL 3977669, at *2–3 (W.D. Va. July 14, 2020) (unpublished); Toran v. Coakley, No. 5:14-24371, 2017 WL 1227951, at *7 (S.D. W. Va. Mar. 8, 2017) (unpublished), report and recommendation adopted, 2017 WL 1217203 (S.D. W. Va. Mar. 31, 2017) (unpublished); Owens v. United States, No. 5:09–CT–3167, 2012 WL 6057126, at *5–6 (E.D.N.C. Dec. 6, 2012) (unpublished). No rational findfinder could find that Davila suffered physical injury. Thus, the court grants the United States' motion for summary judgment.

IV.

In sum, the court DENIES plaintiff's motion to strike [D.E. 93], GRANTS the individual defendants' motion to dismiss [D.E. 62], GRANTS the United States' motion for summary judgment [D.E. 64], and DENIES AS MOOT the individual defendants' motion to stay [D.E. 91]. The clerk shall close the case.

SO ORDERED. This 8 day of September, 2026.

JAMES C. DEVER III
United States District Judge